IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

MOSE WALKER                                                    PLAINTIFF

v.                        No. 2:24-cv-108-DPM

ROBBIN A. CAMPBELL, JR., Chief, in his
individual and official capacity and
THE CITY OF WEST MEMPHIS                      DEFENDANTS

## ORDER

Mose Walker was a captain in the West Memphis Police Department. Chief Robbin Campbell recommended he be fired for "double-dipping." Captain Walker had worked shifts as a security officer at Wal-Mart while on duty with the police department. Captain Walker says Chief Campbell (and the Assistant Chief) gave him permission. He appealed his firing. Mayor Marco McClendon reversed the decision, and instead suspended Captain Walker for twenty days without pay and demoted him to sergeant. Captain Walker then filed suit. He says his suspension and demotion were retaliation for speaking out about problems in the police department. Chief Campbell moves for summary judgment. Many facts are disputed. Where the dispute is genuine, the Court takes the material facts in the light most favorable to Captain Walker. *Van Dorn v. Hunter*, 919 F.3d 541, 544 (8th Cir. 2019).

\*

Three preliminary issues.   First, the Amended Complaint included claims against Mayor McClendon in his individual and official capacities.   The Court granted Captain Walker's motion to dismiss without prejudice the individual capacity claims.[1]   Mayor McClendon was inadvertently terminated as a defendant.[2]   Captain Walker, however, has abandoned those official capacity claims.[3]   The official capacity claims against Mayor McClendon are therefore dismissed without prejudice.

Second, Captain Walker included a claim of sex discrimination in his Charge of Discrimination filed with the EEOC.[4] Chief Campbell and West Memphis move for summary judgment, arguing that Captain Walker failed to state a sex discrimination claim.[5] Captain Walker clearly brings a Title VII retaliation claim, but the Court does not read a sex discrimination claim in his Amended Complaint.[6] That slice of the motion for summary judgment is therefore denied.

---

[1] *Doc. 25 & 26.*

[2] *Doc. 26.*

[3] *Doc. 37-1 at 27;  Doc. 50 at 23.*

[4] *Doc. 37-36 at 2.*

[5] *Doc. 36 at 14–15.*

[6] *Doc. 9.*

–2–

Third, Chief Campbell and West Memphis move to strike documents attached to Major Stacy Allen's affidavit,[7] which are included as part of Captain Walker's response to the motion for summary judgment. The documents were requested in discovery but weren't disclosed. Fed. R. Civ. P. 37(c)(1). Captain Walker says the documents were in Major Allen's possession, not his.[8] He doesn't say when he got the documents from Major Allen. The Court takes judicial notice that Captain Walker's lawyers represent Major Allen (and Captain Walker) in a separate lawsuit[9] against West Memphis that was filed on 9 September 2025, before the discovery deadline in this case. Fed. R. Evid. 201.

The documents at issue don't affect the Court's ruling on the motion for summary judgment. The motion to strike is therefore denied as moot.

\*

Captain Walker didn't agree with how Chief Campbell ran the West Memphis Police Department. He raised concerns about hiring and training at staff meetings.[10] He raised more concerns with Chief Campbell and the Assistant Chief about how the Department was (or

---

[7] *Doc. 52-1 at 5–53.*

[8] *Doc. 59.*

[9] *See Doc. 2 at 1* in *Allen v. City of West Memphis*, Case No. 2:26-cv-58-LPR (E.D. Ark. 10 April 2026).

[10] *Doc. 50 at 3; Doc. 57 at 6–7.*

was not) investigating use of force incidents involving Michael Grant and Cheezy Pulliam.[11] Captain Walker later submitted a tip to the FBI about Grant and answered the Bureau's questions.[12]

Around the same time, Internal Affairs Sergeant Kevin Jordan met with Officer Brianna Porter. The record evidence about Officer Porter's interactions with Internal Affairs points in different directions. Officer Porter and Sergeant Jordan testified on deposition that Officer Porter initially told Sergeant Jordan that she was being sexually harassed by Major Allen, but then recanted that accusation the next day.[13] Officer Porter testified further that Captain Walker and Major Allen pressured her to deny any sexual harassment by Major Allen and to file a complaint against Internal Affairs.[14] Officer Porter's complaint told a different story.[15] In it, she said that she never accused Major Allen of sexual harassment, but that Sergeant Jordan had pressured her to do so because Mayor McClendon and Chief Crawford wanted Major Allen gone.[16] Major Allen was suing the Mayor and others for discrimination and retaliation.

---

[11] *Doc. 50 at 3.*
[12] *Doc. 50 at 3.*
[13] *Doc. 37-9 at 3 & 6–7; Doc. 37-8 at 8–9.*
[14] *Doc. 37-9 at 3.*
[15] *Doc. 37-13.*
[16] *Doc. 37-13 at 2.*

What's undisputed is that after her first meeting with Sergeant Jordan, Officer Porter told Captain Walker that Major Allen never sexually harassed her, but that she felt like Internal Affairs was pressuring her to accuse him anyway.[17] Captain Walker believed (and continues to believe) that the sexual harassment investigation was a sham concocted to get rid of Major Allen.[18] So, he sent a memo to Major Allen—his immediate superior—informing him of the investigation and of his concerns about how it was being conducted.[19] Human Resources eventually interviewed him about Officer Porter's complaint.[20]

When all this was going on (late September to early October 2023), Chief Campbell announced a shift change: all commanders would begin working evening shifts.[21] Captain Walker was a commander. The new schedule conflicted with Captain Walker's second, off-duty job at Wal-Mart on Mondays.[22] Captain Walker says that Chief Campbell told him that he could continue working at Wal-Mart during his shift.[23] But in December 2023, Chief Campbell directed Sergeant

---

[17] *Doc. 37-1 at 18;  Doc. 37-9 at 7.*

[18] *Doc. 50 at 4–7.*

[19] *Doc. 50 at 6–7;  Doc. 37-11.*

[20] *Doc. 50 at 8.*

[21] *Doc. 50 at 10.*

[22] Doc. 37-1 at 35.

[23] *Doc. 37-1 at 36–37.*

Jordan to open an Internal Affairs investigation of Captain Walker.[24] Captain Walker was placed on leave during the investigation and was eventually fired.[25] Captain Walker appealed his termination and was reinstated but was demoted and suspended without pay for twenty days.[26]

*

Captain Walker brings a mix of overlapping claims against West Memphis and Chief Campbell in both his official and individual capacities. See the Appendix. They sort into three[27] categories:

- *First*, free speech retaliation under the First Amendment (with echoing Arkansas Civil Rights Act claims);

- *Second*, Title VII retaliation (with echoing Arkansas Civil Rights Act claims); and

- *Third*, violations of the Arkansas Whistle-Blower Act.

Beginning with the free speech retaliation claims, Captain Walker must prove: (1) that he spoke as a private citizen, rather than pursuant to his official duties; (2) that he was addressing a matter of public

---

[24] *Doc. 50 at 16.*

[25] *Doc. 50 at 16 & 21–22.*

[26] *Doc. 50 at 22–23.*

[27] Not including sex discrimination claims, as explained above.

concern; and (3) that his speaking out was a substantial or motivating factor of an adverse employment action. *Thomas v. Marshall Public Schools*, 152 F.4th 884, 889 (8th Cir. 2025); *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 865 (8th Cir. 2009) (same analysis for ACRA). Captain Walker was speaking pursuant to his official duties when he shared his concerns about hiring, training, and the Grant and Pulliam investigations during staff meetings.[28] The same goes for his memo to Major Allen and his interview with Human Resources about Officer Porter and Internal Affairs.[29]

Tipping the FBI and answering their questions about Grant was not a part of his official duties. But Captain Walker testified on deposition that Major Allen was the only person in the police department who knew that he had talked to the FBI.[30] In his response to the motion for summary judgment, Captain Walker offers a declaration contradicting his deposition testimony.[31] The Court disregards it; a deponent can't crawfish later. *Lykken v. Brady*, 622 F.3d 925, 933 (8th Cir. 2010). Captain Walker also cites a statement he read at his disciplinary hearing, where he accused Chief Campbell of retaliation because the Chief believed that Captain Walker was

---

[28] *Doc. 50 at 2–3.*
[29] *Doc. 50 at 7–8.*
[30] *Doc. 37-1 at 34.*
[31] *Doc. 52-2 at 231–32.*

-7-

talking to the FBI (and others).[32]  Captain Walker says that Joseph White, a former IT administrator for the department, told him that Chief Campbell had said that.[33]  The Court disregards this hearsay evidence, too. *Sherman v. Collins*, 158 F.4th 904, 908 (8th Cir. 2025). Captain Walker hasn't offered admissible evidence that his talking to the FBI was a substantial or motivating factor for the investigation and resulting discipline.

Moving to the Title VII (and ACRA) retaliation claims, Captain Walker must prove that (1) he engaged in a protected activity;  (2) he suffered an adverse employment action;  and (3) his engagement in a protected activity was the but-for cause of the adverse employment action. *Burkhart v. American Railcar Industries, Inc.*, 603 F.3d 472, 477 (8th Cir. 2010).  The deep issue is whether Captain Walker's involvement in the Internal Affairs investigation of Major Allen and Officer Porter is a protected activity.   In a typical case, participating in a sexual harassment investigation is protected activity.  But that's not what happened here.  Captain Walker never believed that Sergeant Jordan was investigating sexual harassment.  Captain Walker believed that it was a sham investigation targeting Major Allen for suing the department. So, he reported it up the chain and, in so doing, revealed the existence of the investigation to its purported target.  That could be

---

[32] *Doc. 52-2 at 235–38.*

[33] *Doc. 52-2 at 231 & 236.*

whistleblowing activity (though this Court won't reach that issue).  But it isn't protected activity under Title VII or the ACRA.  *E.g., Warren v. Kemp*, 79 F.4th 967, 974–75 (8th Cir. 2023).

That leaves the Whistle-Blower Act claims.  The Court declines to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c)(3); *McManemy v. Tierney*, 970 F.3d 1034, 1040–41 (8th Cir. 2020).  It notes, though, that the Act doesn't provide for suit against individuals. Ark. Code Ann. § 21-1-603(a)(1);  *Steinbuch v. University of Arkansas*, 2019 Ark. 356, at 13–14, 589 S.W.3d 350, 359.

\*

Motion for summary judgment, *Doc. 35*, partly granted and partly denied.  Walker's claims against West Memphis and Chief Campbell in his individual and official capacities will be dismissed either with or without prejudice as specified in the Appendix.  His claims against Mayor McClendon in his official capacity will be dismissed without prejudice.  The motion to strike, *Doc. 54*, is denied as moot.

So Ordered.

*[signature]*

D.P. Marshall Jr.
United States District Judge

16 July 2026

–9–

# APPENDIX

| Claim | Disposition |
|---|---|
| 42 U.S.C. § 1983, First Amendment Free Speech Retaliation (West Memphis & Chief Campbell in his official and individual capacities) | Dismissed with prejudice |
| Arkansas Civil Rights Act, Ark. Code. Ann. § 16-123-105, Free Speech Retaliation (West Memphis & Chief Campbell in his official and individual capacities) | Dismissed with prejudice |
| Title VII, 42 U.S.C. § 2000e-3 Retaliation (West Memphis & Chief Campbell in his official and individual capacities) | Dismissed with prejudice |
| Arkansas Civil Rights Act, Ark. Code Ann. § 108, Retaliation (West Memphis & Chief Campbell in his official and individual capacities) | Dismissed with prejudice |
| Arkansas Whistle-Blower Protection Act, Ark. Code Ann. § 21-1-603 (West Memphis & Chief Campbell in his official and individual capacities) | Dismissed without prejudice |

-1A-